FILED

2024 Aug-30  PM 03:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SELINA RENEE WHEATLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 5:23-cv-475-RDP** |
| | } | |
| **MARTIN O'MALLEY,** | } | |
| **COMMISSIONER, SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Selina Renee Wheatley brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed her application for a period of disability and DIB on July 5, 2019 (Tr. 120), alleging a disability onset date of November 25, 2018. (Tr. 104). The application was denied initially on May 22, 2020, and upon reconsideration on September 25, 2020. (Tr. 120, 140). After a hearing held in May 2021 (Tr. 69-102), Administrative Law Judge Shannon H. Heath ("ALJ") issued a decision on June 3, 2021, finding Plaintiff was not disabled. (Tr. 144-154). On February 25, 2022, the Appeals Council remanded the case to the ALJ for further proceedings. (162-64).

The ALJ held a second hearing in September 2022. (Tr. 46-68). In her second decision, dated September 26, 2022, the ALJ determined that Plaintiff had not been disabled within the meanings of §§ 216(i) and 223(d) since November 25, 2018. (Tr. 10-20). After the Appeals Council denied Plaintiff's request for review of the ALJ's second decision on February 7, 2023 (Tr. 1), that decision became the final determination of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the September 2022 hearing, Plaintiff testified that she was fifty-four years old and had an associate's degree. (Tr. 51, 75). Plaintiff previously worked as a medical office receptionist, an insurance clerk, a charting clerk, an administrative support assistant, and an administrative clerk. (Tr. 82-83). Plaintiff alleges that she suffers from diabetes, obstructive sleep apnea, bulging and herniated discs, chronic renal insufficiency, abdominal wall hernias, a history of pulmonary embolism and deep vein thrombosis, early Barrett's Syndrome, sciatica, and chronic headaches. (Tr. 121). According to Plaintiff, she has been unable to work since November 2018. (Tr. 75).

Plaintiff has had three hernia repairs, which cause ongoing abdominal pain and limit her from lifting objects heavier than ten pounds. (Tr. 55, 85). She complains of back pain extending into her legs causing her to have difficulty sitting, standing, and walking. (Tr. 58, 85-86). She suffers from osteoarthritis in her knees that makes it difficult for her to squat, climb stairs, stand, and walk. (Tr. 87-88). Plaintiff has diabetes and suffers from daily blood sugar swings. (Tr. 89). She complains of pain in her hands due to fibromyalgia and prior surgeries and reports this pain causes her difficulty gripping or manipulating objects for more than 15-20 minutes. (Tr. 90-91). According to Plaintiff, her fibromyalgia also causes joint pain, as well as concentration and memory issues. (Tr. 54, 95-96). Additionally, Plaintiff alleges that her diabetes and sleep apnea

cause her severe fatigue, and that she suffers from migraines that are unpredictable in length. (Tr. 91-93).

In February 2014, Plaintiff reported to Dr. Philip Maddox with a metacarpal fracture in one of her left fingers. (Tr. 611). Dr. Maddox placed three screws in Plaintiff's finger. (Tr. 611). A few months later, Plaintiff reported back to Dr. Maddox with a different fracture through one of her drill holes and screws. (Tr. 609). Dr. Maddox inserted a dorsal plate in Plaintiff's finger; at subsequent appointments he noted that Plaintiff was healing well. (Tr. 597, 601, 603, 605).

In June 2017, after a CT scan of Plaintiff's abdomen showed multiple hernias and a large mass, Plaintiff underwent her first hernia repair, which was performed by Dr. Paul Noel. (Tr. 1607). At a follow-up appointment, Plaintiff stated that she was doing well, that her soreness was improving. (Tr. 1465). Although she complained of right lower leg pain, denied any swelling, fever, or redness to the leg. (*Id*.). A doppler ultrasound of Plaintiff's right leg revealed deep venous thrombosis within the right posterior tibial vein. (Tr. 1521). Dr. Noel recorded that Plaintiff's cranial nerves, motor and sensory function, reflexes, gait, and coordination were all intact. (Tr. 1466). Since then, Plaintiff has had two additional hernia surgeries done by Dr. Noel. (Tr. 1044, 1058-59, 1345). After each surgery, Dr. Noel noted that Plaintiff was nontender and nondistended, and that her cranial nerves, motor and sensory function, reflexes, gait, and coordination were all intact. (Tr. 1046, 1690, 1697). After the most recent surgery, Plaintiff stated that she was able "to perform all instrumental activities of daily living independently." (Tr. 1114).

In February 2018, Plaintiff began going to physical therapy for pain in her left shoulder. (Tr. 816). Physical Therapist Tyler Hudgins recorded that Plaintiff exhibited limitations in her left shoulder range of motion and that affected her strength and stability. (Tr. 818). At subsequent physical therapy sessions, Plaintiff showed good progress. (Tr. 791-809). After ten sessions,

Plaintiff had improved cervical and left shoulder range of motion. (Tr. 788). However, Plaintiff continued to report pain when lifting her arms to her sides and, in March 2018, reported feeling a pop in her left shoulder that caused pain and limited her range of motion. (Tr. 775, 780).

In August 2018, Plaintiff underwent an arthroscopic surgery with Dr. Joseph Patrick Boyett to repair a partial rotator cuff tear in her left shoulder. (Tr. 665, 668). Upon discharge, Plaintiff was able to sit and rise from a chair normally, stand still momentarily, and walk a short distance. (Tr. 1257). Physical therapy records after the surgery showed she improved at each session. (Tr. 752-73). In October 2018, Plaintiff was noted to be "doing better" and "making good progress," although she told Dr. Boyett that she did not think she was ready to return to work. (Tr. 661-62). In November 2018, Plaintiff had good rotator cuff strength, could abduct her shoulder to 130 degrees, and flex her shoulder to 160 degrees; therefore, Dr. Boyett released her to return to full activity. (Tr. 658).

In November 2018, Plaintiff reported to Dr. Christopher E. Edwards with abdominal pain. (Tr. 1226). A CT scan of Plaintiff's abdomen revealed a fat stranding adjacent to the tail and distal body of the pancreas. (Tr. 1227). Dr. Eduardo Bazan-Lavanda diagnosed Plaintiff with drug-induced pancreatis but noted that her symptoms were improving. (Tr. 1251). In addition, Dr. Bazan-Lavanda conducted a sleep study on Plaintiff and diagnosed her with severe obstructive sleep apnea and restless leg syndrome but noted that she showed no symptoms of Periodic Limb Movement Disorder. (Tr. 1639). During a second sleep study, in March 2019, Plaintiff reported that her CPAP machine had improved her fatigue and sleepiness, but that she still felt drowsy during the day. (Tr. 1658). However, in May 2019, Plaintiff noted improvement in her fatigue and sleepiness since she was placed on BiPAP therapy. (Tr. 1665).

In March 2019, Plaintiff reported to Athens Limestone Hospital with complaints of knee pain. (Tr. 1181). An x-ray of Plaintiff's left knee showed no fracture or dislocation, no significant abnormalities in Plaintiff's soft tissue, and maintained joint spaces, but osteoarthritis without acute osseus abnormality. (Tr. 1181).

In May 2019, Plaintiff reported to Dr. Bobby N. Johnson related to her diabetes. (Tr. 1822-24). Dr. Johnson noted that Plaintiff had normal range of motion and strength, as well 5/5 strength throughout her motor and neurological exam. (Tr. 1824). Dr. Johnson advised Plaintiff to stick to a low-calorie meal plan and starting an exercise program. (Tr. 1824). At a follow-up in September 2019, Plaintiff denied any new problems and stated that she felt well, although she admitted that she "has not had good control" with diet and exercise. (Tr. 1819). In December 2019, Dr. Johnson noted that Plaintiff had not been compliant with her health regiment and had gained weight. (Tr. 1816). But, in September 2020, Plaintiff's weight had declined, and she reported feeling well. (Tr. 1916). In April 2021, Dr. Johnson recorded that Plaintiff had normal range of motion and strength, and a normal nonfocal exam. (Tr. 1914-15).

In October 2019, Plaintiff reported to the emergency room with chest pain. (Tr. 1149). Dr. Jon D. Turner conducted a cardiovascular evaluation of Plaintiff, and an echocardiogram showed she had a structurally normal heart and normal systolic pressure. (Tr. 1040-41). Plaintiff passed a graded exercise test without any chest discomfort. (Tr. 1041). Dr. Turner opined that Plaintiff's chest pain was gastroesophageal in origin and attributed it to her diabetes and obesity. (Tr. 1041-42). An MRI of Plaintiff's lumbar spine showed normal alignment and no significant abnormalities, but also revealed a few bulging and herniated discs. (Tr. 1163).

In February 2020, Plaintiff again reported to Dr. Turner with complaints of chest pain and high blood pressure. (Tr. 861). Plaintiff had normal range of motion, no limitations on mobility,

and denied any numbness, weakness, confusion, memory problems, or muscle aches/weakness. (Tr. 866). That same month, Plaintiff returned to Dr. Johnson for a checkup and reported having no new problems with her glucose. (Tr. 1813). Dr. Johnson recorded that Plaintiff presented as alert and oriented, and normal in mood and affect with fluent speech. (Tr. 1811).

In May 2020, Dr. Robert Estock conducted a psychiatric consultative examination of Plaintiff and opined that her file did not suggest any noted symptoms or functional limitations of an ongoing mental impairment. (Tr. 113). Dr. Estock opined that Plaintiff's history of anxiety was non-severe and did not affect her functioning. (Tr. 113).

In September 2020, Plaintiff underwent a psychological examination with Dr. Erin M. Smith. (Tr. 1829-32). Plaintiff reported performing daily activities around the house, such as cooking meals for her family, doing light chores and laundry, driving, running errands, and paying bills. (Tr. 1830). Dr. Smith noted that Plaintiff's gait and fine motor skills were unimpaired, that her thought content and processes were within normal limits, that her attention and concentration were fair, and that her recent and remote memory were intact. (Tr. 1831). Plaintiff could repeat six digits forward, four digits backward, four digits in sequence, and perform simple arithmetic calculations. (Tr. 1831). Dr. Smith opined that Plaintiff's overall level of social functioning and her ability to maintain gainful full-time employment were only moderately impaired by her ailments, and her ability to manage funds is adequate. (Tr. 1831-32).

In September 2020, Dr. E. Russell March, Jr. conducted a consultative examination of Plaintiff. (Tr. 138). Although Dr. March opined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, he believed Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms

were not consistent with all of her reported ailments. (Tr. 133). Dr. March concluded that Plaintiff was not disabled and could perform light work. (Tr. 138).

Plaintiff also reported to Dr. John H. Lary, Jr. for a physical examination in September 2020. (Tr. 1834-39). An x-ray of Plaintiff's lumbar spine showed mild to moderate degenerative facet arthritis. (Tr. 1835). Plaintiff's back musculature appeared normal, although Plaintiff exhibited typical behavior for a patient with back pain. (Tr. 1837). Plaintiff did not have any enlarged, swollen, red, or tender joints; she could walk normally, although she was unable to walk on her toes or assume a kneeling/squatting position; and she had normal 5/5 muscle strength. (Tr. 1838-39). Dr. Lary opined that Plaintiff was somewhat impaired in her ability to sit, stand, walk, lift, carry, bend, squat, and kneel; that Plaintiff's ability to reach her non-dominant left arm was somewhat restricted by her range of motion; and that her ability to see, hear, speak, understand, and manipulate objects was unimpaired. (Tr. 1839).

In November 2020, Nurse Practitioner Lisa Weaver -- Plaintiff's personal care provider since 1997 -- opined that Plaintiff is unable to obtain or maintain gainful employment, would be off task for at least one hour in a typical workday, and would miss at least 25-30 days a year. (Tr. 1851, 1855). Further, Weaver opined that Plaintiff could only sit for three hours and stand or walk for two hours in an eight-hour workday. (Tr. 1858). But, Weaver's examination notes show that Plaintiff had normal gait and station, as well as intact recent and remote memory. (Tr. 1924, 2142).

In December 2020, Tsianinia Pruitt, one of Plaintiff's physical therapist's assistants from 2016-18, opined that Plaintiff's inability to tolerate pain medication, her core muscle weakness, and her weight gain each contribute to constant hip and back pain that make everyday chores and exercises difficult to perform. (Tr. 1853).

Plaintiff began seeing chiropractor Dr. J. Rodney Bailey in 2009. (Tr. 1021). In 2020, Dr. Bailey recorded that Plaintiff's symptoms were worsening almost each visit. (Tr. 1872-86). However, Dr. Bailey also recorded that Plaintiff had normal gait, normal posture, and that her muscle strength and her neurological DTR were without limitations. (Tr. 1887). In January 2021, Dr. Bailey opined that Plaintiff can occasionally bend, climb, and reach above her shoulder, but never squat or crawl. (Tr. 1871).

In March 2021, Dr. William J. Shergy examined Plaintiff and noted that her back was without spasm, that she was neurologically intact with good strength and sensation, and that her joints moved well without any synovitis. (Tr. 1900). Dr. Shergy opined that Plaintiff had fibromyalgia and needed to treat her sleep apnea if she wanted to see any improvement in her symptoms. (Tr. 1900). In April 2021, Dr. Shergy conducted another physical exam with the same results. (Tr. 2133).

In August 2021, Plaintiff complained of lower back pain and was referred to Dr. Boyett for bilateral L5-S1 TF injections. (Tr. 1970-71). Although Plaintiff reported mild relief from the injections, she continued to complain of pain. (Tr. 1949). An MRI of Plaintiff's spine showed lower lumbar degenerative changes in L5-S1. (Tr. 2052). Dr. Boyett noted that Plaintiff's cranial nerves were grossly intact, that her gait was stable and balanced, and that she was able to walk heel to toe without difficulty. (Tr. 1951). Dr. Boyett recommended Plaintiff have back surgery. (Tr. 1952).

In September 2021, Dr. Noel noted that Plaintiff's cranial nerves, motor and sensory function, reflexes, gait, and coordination were all intact. (Tr. 1942). A CT scan of her abdomen showed no evidence of a recurrent ventral hernia. (Tr. 1943, 1947). But, in December 2021, Plaintiff fractured three ribs while hugging her spouse. (Tr. 2046-47, 2091).

In May 2022, Dr. Shergy noted that Plaintiff had not reported in over a year. (Tr. 2148). Although Plaintiff stated that she did not feel like her current medication was working, Dr. Shergy observed that Plaintiff's back was without spasm; that her extremities showed no cyanosis, clubbing or edema; that she had good strength, sensation, and reflexes; and that her joints all moved without any synovitis; but that her Vitamin D levels were low. (Tr. 2148, 2154).

In July 2022, Plaintiff complained of pain in her lower back; Dr. Boyett again recommended surgery. (Tr. 2185, 2188). Dr. Boyett noted that Plaintiff's cranial nerves were intact; that she was stable, balanced, and could walk heel to toe without difficulty; and that she had 5/5 strength and flexion. (Tr. 2187). An ultrasound of Plaintiff's right lower extremity did not reveal any evidence of deep venous thrombosis. (Tr. 2202). In August 2022, Dr. Boyett performed a L5-S1 TLIF with 360-degree fusion on Plaintiff. (Tr. 2266). At her six-week follow-up, Plaintiff was doing well and only reported 4/10 pain. (Tr. 38). Dr. Boyett instructed Plaintiff to discontinue using her brace, stop any restrictions, and return to bending, lifting, and twisting as tolerated. (Tr. 39).

In October 2022, Plaintiff saw Nurse Practitioner Jennifer Smith for fibromyalgia. (Tr. 41-42). Smith recorded that Plaintiff was tearful because she was denied disability benefits, and opined that Plaintiff had limited range of motion, was unable to walk long distances, and was unable to do household chores. (Tr. 42).

At the September 12, 2022 hearing, the ALJ asked a vocational expert ("VE") to consider an individual with the same age, education level, and prior work history as Plaintiff with the following limitations: the hypothetical individual can perform no more than light exertion; only occasionally push and pull with the bilateral lower extremities; never climb ladders, ropes, or scaffolds but occasionally may climb ramps or stairs, balance, stoop, kneel, crouch, or crawl;

occasionally may reach in all directions with the upper left extremity; and must avoid concentrated exposure to temperature extremes, unprotected heights, and moving machinery. (Tr. 64). The VE testified that such a hypothetical individual would be able to perform all of Plaintiff's past work, although the positions would be available in lower occurrence rates due to the limitation of occasionally reaching with the left upper extremity. (Tr. 64-65).

The ALJ then asked the VE if the same jobs would be available for a hypothetical individual with the same limitations who could not lift more than ten pounds. (Tr. 65). The VE testified that all of the sedentary positions that Plaintiff had previously worked would be available for such a hypothetical individual, although again in reduced numbers. (Tr. 65).

Next, the ALJ asked the VE to consider a hypothetical individual with the same limitations in the previous hypotheticals, but who would also need to alternate between sitting and standing every fifteen minutes while remaining on task. (Tr. 65). The VE testified that such a hypothetical individual would be precluded from all employment. (Tr. 65-66).

Finally, the ALJ asked the VE to consider a hypothetical individual with the same limitations as the first two hypothetical individuals but who would be expected to be absent at least one day every two weeks. (Tr. 66). The VE testified that such an individual, too, would be precluded from all employment. (Tr. 66).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or

profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 25, 2018, and that she met the insured status requirements of the Act through December 31, 2023. (Tr. 13). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has the followings severe impairments: abdominal hernias; lumbar degenerative disc disease; obesity; osteoarthritis; fibromyalgia; and diabetes mellitus. (Tr. 13). Nevertheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ evaluated Plaintiff's testimony and found that Plaintiff's descriptions of the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence and other evidence in the record. (Tr. 16). After consideration of the entire record, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she can occasionally push/pull with the bilateral lower extremities; she can never climb ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she can occasionally reach in all directions with the left upper extremity; and she must avoid concentrated exposure to extreme temperatures, unprotected heights, and moving machinery. (Tr. 15).

Based on this RFC, the ALJ concluded that Plaintiff is capable of performing her past relevant work. (Tr. 19). Therefore, the ALJ ruled that Plaintiff had not been under a disability, as defined in the Act, since November 25, 2018, and she is not entitled to a period of disability or DIB.

## III.   Plaintiff's Argument for Remand

Plaintiff presents two arguments for remand. First, Plaintiff argues that the ALJ did not properly evaluate some of the medical opinions. Second, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Neither argument has merit.

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  Discussion

After careful review, the court concludes that the ALJ's decision is supported by substantial evidence and that she applied the law correctly.

### A.  The ALJ properly evaluated the medical opinions

The regulatory framework for reviewing medical evidence has changed for claims filed after March 17, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed her application on July 5, 2019, the new regulations apply to her. *Id.*; *see Glover v. Comm'r, Soc. Sec. Admin.*, 2022 WL 17826364, at *3 (11th Cir. 2022). Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [Plaintiff's] medical sources. *Id.* at § 404.1520c(a). Rather, an ALJ must evaluate each medical opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* at § 404.1520c(c). Further, an ALJ must state in the written decision the extent to which it is determined that the medical opinions and the prior administrative medical findings in the record are persuasive. *Id.* at § 404.1520c(b).

Because supportability and consistency are the most important factors, an ALJ is required to explain how these two factors were considered in determining a medical source's persuasiveness. *Id.* at § 404.1520c(b)(2). However, the ALJ need not address supportability and consistency through separate analyses so long as the substance of both factors is assessed. 20 C.F.R. § 404.1520c(b)(2); *see also Thaxton v. Kijakazi*, 2022 WL 983156, at *8 (M.D. Ala. 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with over evidence of record."). The ALJ may consider multiple medical opinions from the same source

together using the above factors, and the ALJ is not required to articulate how each opinion or finding was considered. 20 C.F.R. § 404.1520c(a).

Plaintiff asserts that the ALJ either did not properly evaluate or failed to articulate the reasons for discrediting eight medical opinions. The court examines each opinion, in turn, below.

### 1. The Weaver Opinion

The ALJ analyzed the multiple opinions from Nurse Practitioner Lisa Weaver and concluded as follows:

> Exhibit 23F is a medical opinion form, it is assumed completed by Ms. Lisa Weaver, APN…She opined [Plaintiff] could sit three hours, stand two hours, and walk two hours. This opinion is not persuasive because it is not a completed functional assessment. Rather, it only fills out the section on sit, stand, walk without any of the other exertional or nonexertional limitation questions/sections being completed. Further, it is not consistent with the objective records from this provider or other providers during the period in question, including reports of [Plaintiff] taking care of family members. The only positive exam findings from this provider were vague and included "spinal tenderness and pain" in the lumbar region. Treatment notes from other providers, however, were within normal limits including normal gait, strength and sensation and full range of motion. It is also inconsistent with Ms. Weaver's repeated recommendation of regular exercise including four times a week or more of walking or other light activity. (See *e.g.*, Exhibit 39F). Lastly, Ms. Weaver did not provide any support for her opinion.

> Exhibits 21F is a statement from Lisa Weaver … indicating [Plaintiff] would be expected to miss 25-30 days of work per year and would be distracted from job tasks one or more hours in a workday. This opinion is not consistent with the objective medical records of this provider or other providers and presumably is based on the subjective reports of [Plaintiff]. It is not fully consistent with the admitted daily activities of [Plaintiff] including caring for family members and Ms. Weaver does not provide any support for her opinion. As such, it is not persuasive.

> Exhibit 22F is a pain statement from Lisa Weaver, APN. Pain is, as the form states, "highly subjective" and necessarily has to be based on the subjective reports of [Plaintiff] with respect to pain. Further, it is not consistent with the objective treatment records of this provider or other providers and is not fully consistent with [Plaintiff's] admitted activities including caring for family members and there is no evidence that [Plaintiff] experiences debilitating pain. She testified she takes very little pain medication and she does not go to a pain clinic. Further, there are significant gaps in treatment. Lastly, it does not offer a functional assessment of

> [Plaintiff's] limitations and provides no support for the opinion. As such, it is not persuasive. …
>
> Exhibit 19F is a narrative treating source statement [from] Ms. Weaver. This opinion is not persuasive because it is not a functional assessment of limitations and proffers an opinion on [Plaintiff's] ability to work that is reserved for the commissioner.

(Tr. 18-19). Plaintiff argues that the ALJ's analysis of Weaver's opinion was erroneous for a host of reasons. But, substantial evidence supports the ALJ's conclusion that Weaver's opinions are not persuasive.

Although Weaver opined that Plaintiff could only sit for three hours and stand/walk for two hours in an eight-hour workday (Tr. 1858), Weaver's own examination notes conflict with these limitations. Weaver repeatedly recorded that Plaintiff had normal gait and station, and she even encouraged Plaintiff to exercise four times or more a week. (Tr. 1924, 2086, 2096-97, 2142). Numerous other physicians agreed and opined that Plaintiff had full range of motion and normal gait and station. (Tr. 866, 1046, 1824, 1887, 1914, 2133, 2187). And, both Dr. March and Dr. Hogan opined that Plaintiff could perform light work. (Tr. 118, 138). *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that a medical opinion is more persuasive the more consistent it is with the evidence from other sources); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017) ("A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.").

Similarly, Weaver's medical opinion is at odds with Plaintiff's own testimony. Although Weaver opined that Plaintiff's pain would be distracting to adequate performance of daily activities or work (Tr. 1856), Plaintiff herself admitted that she prepares meals for her family, takes care of light cleaning around the house, shops for groceries, and helps care for the family's pets. (Tr. 487-

16

89). She enjoys watching TV, baking and cooking, reading, shopping, and helping her husband around the house and yard. (Tr. 490). She admitted that she does not take a lot of pain medication. (Tr. 62). And, throughout physical therapy, Plaintiff repeatedly stated that she did not think her pain would bother her when she returned to work. (Tr. 672-700). This record evidence supports the ALJ's finding that Weaver's opinions were inconsistent with the overall record. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. 2022) (holding substantial evidence supported the ALJ's finding that an opinion was inconsistent and not persuasive in part because it conflicted with the plaintiff's testimony of her daily activities).

Finally, Weaver opined that Plaintiff is unable to obtain or maintain gainful employment, would be off task for at least one hour in a typical workday, and would miss in excess of 25-30 days a year. (Tr. 1851, 1855). But, "[a] medical source's opinion that a [plaintiff] is 'disabled' or 'unable to work' is not dispositive of a disability claim because the determination is reserved to the [ALJ] acting on behalf of the Commissioner." *Walker v. Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021); 20 C.F.R. § 404.1527(d)(1). Therefore, the ALJ was not required to take this statement into account and did not err by declining to do so.

The ALJ considered each of Weaver's opinions and articulated adequately the reasons for finding them unpersuasive. Because the ALJ's finding are supported by substantial evidence, the ALJ did not err in assessing Weaver's opinions.

## 2.    The Lary and Smith Opinions

Dr. Erin Smith conducted a psychological evaluation of Plaintiff in September 2020 and opined as follows:

> [Plaintiff's] overall level of social and adaptive functioning, based upon cognitive or mental health issues, appears to be moderately impaired. She has been able to function at an age-appropriate level in the past. Her ability to maintain gainful full-

time employment, based upon cognitive or mental health issues, is moderately impaired. Her ability to manage any funds she may receive is adequate.

(Tr. 1831). Likewise, Dr. John Lary conducted a physical evaluation of Plaintiff that same month and opined the following:

In my opinion, [Plaintiff's] ability to sit, stand, walk, life, carry, bend, squat, and kneel is somewhat impaired by chronic back and knee pain compounded by obesity. Her ability to reach using non-dominant left arm is impaired somewhat by restricted range of motion. Her ability to see (may need glasses), hear, speak, understand, and manipulate small objects is unimpaired.

(Tr. 1839). The ALJ analyzed Dr. Smith and Dr. Lary's examination findings in her opinion:

Erin Smith, Psy.D. opined [Plaintiff's] "ability to maintain gainful employment, based on cognitive or mental health issues, is moderately impaired." (Exhibit 17F). This opinion is not persuasive, as it does not proffer functional mental assessments in that "moderately" is not a functionally appropriate term per the regulations. …

Dr. Lary opined [Plaintiff's] ability to sit, stand, walk, lift, carry, bend, squat and kneel is somewhat impaired by chronic back and knee pain compounded by her obesity. (Exhibit 18F). This opinion is not persuasive because it is not a specific functional assessment of limitations. "Somewhat impaired" is not a specific enough or vocationally appropriate term/assessment of limitations under the regulations.

(Tr. 14, 19). Plaintiff argues that the ALJ erred by not engaging in any assessment of the consistency or supportability of either Dr. Smith or Dr. Lary's opinions. In response, the Commissioner contends that the ALJ did not have to evaluate the supportability or consistency of either statement because neither of them qualified as a medical opinion. The court agrees with the Commissioner.

A "medical opinion" is a "statement from a medical source about what [a plaintiff] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in performing the physical and mental demands of work activities, the other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)-(iv). Accordingly, a medical assessment that diagnoses and observes a patient,

but does not opine on what the patient can do, is not a "medical opinion." *See Tina W. v. Comm'r of Soc. Sec.*, 2021 WL 1523906, at *4 (N.D. Tex. 2021) (citing *Winston v. Berryhill*, 755 F. App'x 395, 402 (11th Cir. 2018) (concluding that "a 'medical opinion' requires *both* an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions") (emphasis added)). Although Dr. Smith and Dr. Lary both focused on Plaintiff's limitations, neither opined on her abilities. Therefore, the ALJ was not required to evaluate the supportability or consistency of either statement.

Even if the court were to find that the statements *did* constitute medical opinions (and to be clear, the court finds that they do not), substantial evidence supports the ALJ's conclusion that the opinions are unpersuasive because they are inconsistent with the other evidence in the record. Although Dr. Smith opined that Plaintiff's ability to maintain gainful, full-time employment was moderately impaired by her cognitive or mental health issues (Tr. 1831), her own observations contradict this finding. Notably, Dr. Smith recorded that Plaintiff's cognition was average; that she provided age appropriate similarities and adequate interpretations to proverbs; that she was able to register three objects immediately and recall one object after a five minute delay; that she could repeat six digits forward, four digits backward, and four digits in sequence; that she could perform arithmetic and serial-3 subtraction; that Plaintiff's attention and concentration were fair; and that her recent and remote memory was intact. (Tr. 1831). Other evidence in the record also supports a finding that Plaintiff does not suffer from cognitive limitations. Dr. Estock opined that Plaintiff's file did not suggest any symptoms or functional limitations of an ongoing mental impairment, and that Plaintiff's history of anxiety is non-severe and does not affect her functioning. (Tr. 113). In 2020, Plaintiff denied any confusion or memory problems. (Tr. 866). And, in her function report, Plaintiff stated that she usually has no problem paying attention or following spoken instructions,

has no problem following written instructions or getting along with authority figures, and typically finishes any task that she starts. (Tr. 491).

Similarly, substantial evidence supports the ALJ's conclusion that Dr. Lary's opinion is unpersuasive because it is inconsistent with other medical findings throughout the record. Although Dr. Lary opined that Plaintiff's ability to sit, stand, walk, lift, carry, bend, squat, and kneel is somewhat impaired by chronic back and knee pain (Tr. 1839), both Dr. Johnson and Dr. Turner repeatedly noted that Plaintiff had normal range of motion, normal strength, and no limitations on mobility. (Tr. 866, 1824, 1914). And, after Plaintiff's back surgery in 2022, Dr. Boyett instructed Plaintiff to stop any restrictions and return to bending, lifting, and twisting. (Tr. 39).

Therefore, the court finds that the ALJ did not err in assessing the statements of Dr. Smith and Dr. Lary because neither qualified as a medical opinion. However, even if it could be said they did, substantial evidence supports the ALJ's conclusion that the opinions are unpersuasive.

### 3. The Bailey Opinion

The ALJ reviewed Dr. Bailey's statements regarding Plaintiff's abilities and opined as follows:

> Rodney Bailey, D.C. opined [Plaintiff] can lift/carry up to 10 pounds occasionally; not use the left hand for repetitive grasping or pushing/pulling; occasionally bend, climb and reach above the shoulder; never squat or crawl; has moderate restriction against working around moving machinery, temperature changes and pulmonary irritants. (Exhibit 25F). This opinion is not persuasive because it is not consistent with the record as a whole and Dr. Bailey is a chiropractor, not an acceptable medical source. Further, he provides no support for his opinion.

(Tr. 19). Plaintiff argues that the ALJ erred in her conclusory dismissal of Dr. Bailey's opinion as inconsistent and in focusing on the fact that the Dr. Bailey was not an acceptable medical source.

As an initial matter, the court notes that the ALJ's decision that Dr. Bailey's statements are unpersuasive simply because he is not an acceptable medical source is problematic. Although chiropractors are excluded from the list of medical sources who meet the definition of an "acceptable medical source," Dr. Bailey is nonetheless a "medical source" under 20 C.F.R. § 404.1502(a), (d). Under the new regulations that apply to evaluating medical opinion evidence, the ALJ must analyze the persuasiveness of "*all* of the medical opinions" in the record, not just opinions from acceptable medical sources. *See* 20 C.F.R. § 404.1520c(b) (emphasis added). Therefore, Dr. Bailey's status as a "medical source," rather than an "acceptable medical source," does not automatically render his opinion unpersuasive. *See Nicole R. v. Comm'r of Soc. Sec.*, 2022 WL 3040084, at *4 (S.D. Ohio 2022) (finding that a chiropractor was a medical source).

Nonetheless, the ALJ's conclusion that Dr. Bailey is not a medical source is irrelevant because the ALJ still evaluated the persuasiveness of Dr. Bailey's opinion. The ALJ stated that Dr. Bailey's opinion was not persuasive because it was inconsistent with the record as a whole and because he provided no support for his opinion. (Tr. 19). Substantial evidence supports this finding. Dr. Bailey opined that Plaintiff could occasionally lift/carry up to 10 pounds, never use her left hand for repetitive grasping or pushing/pulling, never squat or crawl, and could only occasionally bend, climb, and reach above the shoulder. (Tr. 1871). But, Dr. Bailey did not supply any facts to support this view, and the records from his examination do not lend any such support. In fact, Dr. Bailey recorded that Plaintiff had normal gait, normal posture, and that her muscle strength and her neurological DTR were without limitations. (Tr. 1887).

Dr. Bailey's opinion is also inconsistent with the other medical opinions in the record. Although Dr. Bailey opined that Plaintiff could never squat or crawl and could only occasionally bend, climb and reach above her shoulder, Dr. Boyett opined that Plaintiff was stable, balanced,

and could walk heel to toe without difficulty, had 5/5 strength and flexion in her musculoskeletal examination, and had no limitations bending, lifting, and twisting (Tr. 39, 2187). Further, whereas Dr. Bailey opined that Plaintiff could not use her left hand for repetitive grasping or pushing/pulling, Dr. Shergy recorded that Plaintiff had good strength, sensation, and reflexes, that her joints moved without any synovitis, and that her grip was good. (Tr. 2133).

In light of the ALJ's evaluation of the entire record, and after careful review, the court finds that substantial evidence supports the ALJ's finding of Dr. Bailey's opinion as unpersuasive.

### 4.      The Pruitt Opinion

Tsianinia Pruitt, one of Plaintiff's physical therapist's assistants from 2016-18, opined that Plaintiff's inability to tolerate pain medication, core muscle weakness, and weight gain contributed to her constant hip and back pain and made everyday chores and exercises difficult for her to perform. (Tr. 1853). Further, Pruitt opined that Plaintiff continued to suffer from shoulder pain and decreased range of motion, even after completing physical therapy. (Tr. 1853). The ALJ evaluated Pruitt's statement and concluded as follows:

> Exhibit 20F is a narrative statement of Tsianinia Pruitt. This opinion is not persuasive as she is not a licensed physical therapist; rather she is a physical therapist assistant. Further, it is not a formal functional assessment of limitations and there are no physical therapy records to corroborate treatment.

(Tr. 19). Plaintiff argues that the ALJ erred because (1) the ALJ mistakenly concluded that Pruitt's opinion was not medical evidence; (2) a formal functional assessment of limitations is not required; and (3) there are physical therapy records in the record. The court agrees with all three of these arguments.

First, as addressed above, even though a physical therapist's assistant does not meet the definition of an "acceptable medical source," it still qualifies as a "medical source" that an ALJ must analyze. *See* 20 C.F.R. §§ 404.1520c(b); 404.1502(a), (d). Second, although the ALJ focused

on the fact that Pruitt's opinion was not a formal functional assessment, this was irrelevant. The regulations do not require a medical opinion be in a certain format. *See Schinck v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1261 (11th Cir. 2019); *Glover v. Comm'r of Soc. Sec.*, 2022 WL 17826364, *3 n.3 (11th Cir. 2022) ("It is well-established that an ALJ cannot reject a medical opinion because it is not in a particular format."). Finally, contrary to the ALJ's conclusion otherwise, the record consists of physical therapy records from Plaintiff's time at Drayer Physical Therapy. (*See* Ex. 4F).

However, even though the ALJ did not address the supportability and consistency of Pruitt's opinion as required by 20 C.F.R. § 416.920c, the physical therapy records, medical evidence, and Plaintiff's own testimony indicate that Pruitt's opinion regarding Plaintiff's physical capabilities is not supported by substantial evidence in the record. Indeed, it is readily apparent from the record that the ALJ would have reached the same conclusion regarding Pruitt's opinion had the ALJ explained how she considered the supportability and consistency factors. Thus, any error is harmless. *See Mills v. Astrue*, 226 F. App'x 926, 931 (11th Cir. 2007) ("[W]hen an incorrect application of the regulation results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Pons v. Comm'r of Soc. Sec.*, 2022 WL 1214133, at *3 (11th Cir. 2022) (holding than ALJ's failure to address a physician's opinion was harmless because "the [ALJ's] good cause for rejecting [the opinion] is plainly evident on the face of the record, rendering remand futile.").

Pruitt opined that Plaintiff's core muscle weakness, weight gain, and inability to tolerate pain medication made everyday chores and exercises difficult to perform and caused her to suffer from shoulder pain and decreased range of motion even after completing physical therapy. (Tr.

1853). But, the physical therapy records from this same period do not support that opinion. Throughout sixteen visits, Plaintiff reported an average pain level of 2/10 and showed continuous improvement in range of motion. (Tr. 672-720). At one of these visits, Pruitt even opined that Plaintiff's rehab potential and discharge prognosis were "good." (Tr. 700). And, Plaintiff repeatedly told Pruitt and the other staff that although she had yet to return to work, she did not think her pain would bother her when she eventually did. (Tr. 672-700).

Nor is Pruitt's opinion supported by other evidence in the record.  After shoulder surgery in 2018, Plaintiff could abduct her shoulder to 130 degrees and flex her shoulder to 160 degrees, and, as a result, was released to full activity. (Tr. 658). Dr. Johnson noted on several occasions that Plaintiff had normal range of motion and strength. (Tr. 1824, 1914-15). And, Plaintiff herself admitted that she had little difficulty cooking, moving a kitchen chair, doing light chores, and dressing/grooming herself and only mild difficulty washing dishes, grocery shopping, unpacking and shelving groceries, and driving. (Tr. 487-89, 1843-44).

Therefore, although the court agrees with Plaintiff that the ALJ erred in some of her analysis of Pruitt's opinion, that error is harmless. It is readily apparent that the ALJ would have reached the same conclusion regarding Pruitt's opinion regardless of these errors and, as a result, remand would be futile. *See Mills*, 226 F. App'x at 931; *Pons*, 2022 WL 1214133, at *3. Substantial evidence supports the ALJ's decision that Pruitt's opinion about Plaintiff's abilities is not persuasive.

### 5.       The Hogan/Hinton Opinions

Next, Plaintiff asserts that the ALJ erred by not considering the opinions of Dr. Hogan or Dr. Hinton. Before the court dives into this argument, some deciphering of the medical record and the ALJ's opinion is necessary.

Dr. Hogan provided a medical opinion about Plaintiff's physical abilities at the initial stage of Plaintiff's disability application process and opined that Plaintiff had relatively mild limitations. (Tr. 114-17). At the reconsideration stage, Dr. March provided a second medical opinion finding Plaintiff was only slightly more limited. (Tr. 133-37). Although the ALJ did not evaluate the persuasiveness of Dr. Hogan's examination findings at the initial stage, the ALJ did evaluate Dr. March's opinion:

> Dr. March opined [Plaintiff] could perform light work except occasionally push/pull with the bilateral lower extremities; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead and laterally with the left upper extremity; and avoid concentrated exposure to temperature extremes and workplace hazards. (Exhibit 3A). This opinion is persuasive because it is consistent with the record as a whole including evidence received at the hearing level, which does not show any worsening of [Plaintiff's] conditions. Further, his opinion is supported by appropriate reference to the record.

(Tr. 18).

Similarly, Dr. Estock provided a medical opinion about Plaintiff's mental abilities at the initial stage of the application process and opined that Plaintiff's anxiety is non-severe and does not restrict her functioning. (Tr. 112-13). At the reconsideration stage, Dr. Hinton provided a second opinion finding that Plaintiff's mental impairments only had a mild effect on her ability to understand, remember, or apply information; her ability to interact with others; her ability to concentrate, persist, or maintain pace; and her ability to adapt or manage herself. (Tr. 131-32). Similarly, Dr. Hinton's view was Plaintiff's cognitive ability moderately impaired her ability to maintain employment. Once again, the ALJ addressed only one opinion – Dr. Estock's:

> Dr. Estock opined that [Plaintiff] could perform light work except occasionally push/pull with the bilateral lower extremities; frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and avoid concentrated exposure to temperature extremes and all exposure to workplace hazards. (Exhibit 1A). This opinion is partially persuasive because it is consistent with the record at the initial level.

(Tr. 18).

After review, it appears that the ALJ mistook the opinion of Dr. Hogan as the opinion of Dr. Estock. As mentioned above, Dr. Hogan opined on Plaintiff's *physical* abilities at the initial stage, whereas Dr. Estock opined on Plaintiff's *mental* abilities. Yet, when evaluating Plaintiff's physical capabilities, the ALJ referenced Dr. Estock. (Tr. 18). The court concludes that although the ALJ described the findings of Dr. Hogan's physical assessment (*see* Tr. 113-19), the ALJ mistakenly labeled them as the findings of Dr. Estock. Indeed, the Commissioner admits this error. (*See* Def.'s Br., Doc. # 15 at 19 n.5) ("The ALJ's decision references Dr. Estock, but she appears to have been actually considering the prior administrative medical findings of Victoria Hogan, M.D., which assessed Plaintiff's physical functioning."). Having said that, this error is of no help to Plaintiff. Although Plaintiff argues that the ALJ erred by not considering the opinions of Dr. Hogan and Dr. Hinton, it is readily apparent that the ALJ actually *did* consider the opinion of Dr. Hogan. Instead, the ALJ did not consider Dr. Hinton and Dr. Estock's opinions about Plaintiff's psychological functioning.

An ALJ's failure to evaluate one opinion is not reversible error when it and another opinion were consistent with and supported the ALJ's findings. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) (concluding although the ALJ failed to analyze two medical opinions, the error was harmless because the opinions were consistent with the ALJ's findings) (citing *Dioro*, 721 F.2d at 728). Dr. Estock opined that Plaintiff's anxiety is non-severe and does not hinder her functioning. (Tr. 113). And, Dr. Hinton opined that Plaintiff's mental impairments only mildly affect her ability to understand, remember, or apply information, her ability to interact with others, her ability to concentrate, persist, or maintain pace, and her ability to adapt or manage herself. (Tr. 131-32). This observation fits squarely within the ALJ's findings.

Although Plaintiff has alleged that she had occasional lapses in concentration, the ALJ noted that during Plaintiff's mental status examination, she recalled three of three items immediately, one of three items after five minutes, had fair attention and concentration, and had intact recent and remote memory. (Tr. 14). Similarly, although Plaintiff complained of problems understanding or remembering information, the ALJ noted that Plaintiff prepares meals, pays bills, remembers to take all medications, and drives. (Tr. 14). Ultimately, the ALJ concluded that Plaintiff is only mildly limited in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Tr. 14). As a result, the ALJ did not account for any limitations in Plaintiff's RFC based on her cognitive or psychological abilities. The opinions of Dr. Estock and Dr. Hinton are consistent with this conclusion. Thus, as substantial evidence supports the ALJ's findings, the ALJ's failure to evaluate either opinion was harmless.

### 6.    The Schumacher Opinion

In August 2021, Plaintiff was referred to Physical Therapist Seth Shumacher for an evaluation for lower back pain. After his assessment of Plaintiff, Shumacher stated as follows:

> Pt is a 53 yo female referred to PT by Blake Boyett for evaluation of low back p(ain). Pt presents to therapy with S&S of low back p(ain) with radiculopathy into Bilateral LE secondary to the following findings: decreased lumbar ROM and p(ain) with all motions, decreased LE strength with L worse than R, pos LSR and FABER bilaterally, mild decrease with traction, hypomobility and severe p(ain) to palpation over lumbar spine with worse p(ain) over L5-S1. Functionally pt has limitations with walking (20 min), standing (20 min), sitting (20-30 min), transitional movements like getting out of bed or getting in/out of car, home ADLs, sweeping, mopping, vacuuming, squatting, bending, lifting. Pt scores 25/50 on Oswestry LBP indicating moderate functional loss due to p(ain). Pt has a fair rehab potential due to extensive past medical hx. Pt will benefit from skilled physical therapy to improve on the above-mentioned deficits and improvements to improve function and QOL.

(Tr. 2039).

The ALJ did not address Schumacher's assessment. Plaintiff argues that the ALJ erred in failing to consider Shumacher's opinion or include his limitations when formulating Plaintiff's RFC. In response, the Commissioner contends that the ALJ was not required to address or consider Shumacher's limitations because they were not a medical opinion, but only recapped Plaintiff's subjective complaints.

Subjective complaints by a plaintiff, even when recorded by a medical source, simply are not medical opinions. *See* 20 C.F.R. § 404.1513(a)(4) (defining evidence from a plaintiff as evidence from a nonmedical source); *see also Wood v. Comm'r of Soc. Sec.*, 2021 WL 2634325, at *6 (M.D. Fla. 2021) (stating that a plaintiff's own subjective complaints written down by a physician do not constitute medical opinions). The Commissioner argues that the ALJ was not required to analyze Shumacher's physical therapy evaluation because it was only a recap of Plaintiff's subjective reports of pain. To some extent, the court agrees. For example, Shumacher's statements regarding the amount of time Plaintiff can walk, stand, and sit, as well as Plaintiff's reported difficulty getting out of bed, getting in/out of a car, home ADLs, sweeping, mopping, vacuuming, squatting, bending and lifting are not findings from Schumacher's examination of Plaintiff, but instead taken directly from Plaintiff's subjective complaints during her report of her medical history. (*See* Tr. 2038). As a result, these statements do not qualify as a medical opinion, and the ALJ was not required to consider them.

Having said that, portions of Schumacher's evaluation notes *are* objective findings from his examination of Plaintiff. Schumacher recorded that Plaintiff had decreased lumbar range of motion, as well as decreased LE strength. (Tr. 2039). This clearly qualifies as medical evidence under § 404.1513(a). Yet, even though this is so, the ALJ did not err in failing to explicitly discuss this medical evidence in her analysis because there is no rigid requirement that an ALJ specifically

refer to every piece of evidence in a decision. *Callahan v. Comm'r of Soc. Sec.*, 2023 WL 3736042, at *1 (11th Cir. 2023). Rather, an ALJ's opinion is proper -- even if it does not refer to a piece of evidence -- so long as the decision considers a plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, the ALJ clearly stated that she considered all of Plaintiff's symptoms, the medical opinions, and the prior administrative medical findings. (Tr. 15). Her findings easily clear this hurdle. *See Spears v. Saul*, 2023 WL 2563728, at *13 (N.D. Ala. 2023) (finding that an ALJ's statement that he "considered the medical opinions and prior administrative medical findings" show that he considered the plaintiff's medical condition as a whole); *see also Thornton v. Comm'r of Soc. Sec.*, 597 F. App'x 604, 614 (11th Cir. 2015) (per curiam) (holding than an ALJ's failure to discuss certain record evidence was harmless because the ALJ's RFC assessment was supported by substantial evidence). Therefore, the ALJ did not err in failing to explicitly evaluate Schumacher's opinion.

### B.     Substantial evidence supports the ALJ's decision that Plaintiff is not disabled

After consideration of the entire record, the ALJ concluded as follows:

[Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except occasionally push/pull with the bilateral lower extremities; never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; occasionally reach in all directions with the left upper extremity; and avoid concentrated exposure to temperature extremes, unprotected heights, and moving machinery.

(Tr. 15). Based on this RFC, the ALJ determined that Plaintiff is capable of performing her past work. (Tr. 19).

Plaintiff argues that the ALJ's finding that she is not disabled is not supported by substantial evidence. In making this argument, Plaintiff points to MRIs, physical therapy notes, and her own subjective complaints that she believes support a finding of disability. But, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the

record that supports her position; she must show the *absence* of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (emphasis added). Plaintiff has not done that.

Substantial medical evidence supports the ALJ's determination that Plaintiff can perform light work. Indeed, both Dr. March and Dr. Hogan opined that Plaintiff could perform light work. (Tr. 118, 138). Numerous physicians recorded that Plaintiff's cranial nerves, motor and sensory function, reflexes, and coordination were all intact. (Tr. 1046, 1466, 1690, 1697, 1942, 1951, 2187). Plaintiff repeatedly had normal range of motion, as well as 5/5 strength throughout her motor and neurological exams. (Tr. 866, 1824, 1838, 1887, 2187). It was often recorded that Plaintiff had normal gait and station, and Nurse Practitioner Weaver even encouraged Plaintiff to exercise four times a week or more. (Tr. 1924-25, 2086, 2096-97, 2142-43). Although Plaintiff complained of shoulder pain, she showed improved cervical and left shoulder range of motion after ten physical therapy sessions and, in November 2018, was released to full activity after Dr. Boyett noted that she was able to abduct her shoulder to 130 degrees and flex her shoulder to 160 degrees. (Tr. 658, 788). Further, the ALJ accounted for Plaintiff's shoulder pain when she limited her to light work with only occasional reaching of the upper left extremity.

There is more. Plaintiff's own testimony supports a finding that she can perform light work. Plaintiff admitted to having little difficulty cooking, moving a kitchen chair, doing light chores, and dressing/grooming herself, and only mild difficulty washing dishes, grocery shopping, unpacking and shelving groceries, and driving. (Tr. 487-89, 1843-44). She spends her days watching TV, baking and cooking, reading, shopping, and helping her husband around the house and yard. (Tr. 490). She takes little pain medication. (Tr. 62). In her function report, Plaintiff stated that she usually has no problem paying attention or following spoken instructions, she has no

problem following written instructions or getting along with authority figures, and she typically finishes any task that she starts. (Tr. 491). And, throughout physical therapy, Plaintiff repeatedly stated that although she had not at that point returned to work, she did not think her pain would bother her when she did. (Tr. 673-700). All of this supports a finding that Plaintiff can perform light work.

At this stage of review, the relevant inquiry is not whether some evidence might support a finding of greater limitations than those provided in the RFC; rather, the question is whether substantial evidence supports the ALJ's decision. Undoubtedly, Plaintiff suffers from a number of ailments that limit her daily activities. However, each of these limitations are reflected in the ALJ's findings and her determination of Plaintiff's RFC. The ALJ's findings are supported by substantial evidence.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 30, 2024.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE